**Signed and Filed: July 6, 2012**

_____

**THOMAS E. CARLSON**
**U.S. Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| In re | ) | Case No. 12-30388 TEC |
| 2655 BUSH LLC, | ) | Chapter 11 |
| | ) | |
| | ) | |
| Debtor. | ) | |

**MEMORANDUM DECISION RE MOTION FOR RELIEF FROM STAY**

On June 21, 2012, the court held a final hearing regarding the motion for relief from stay brought by Sum M. Seto Properties, LLC and Jenny P. Seto Properties, LLC (Lender). James A. Tiemstra and Eric D. Tetrault appeared for Lender. Michael St. James appeared for Debtor. Upon due consideration, and for the reasons stated below, I determine that Debtor does have equity in the real property in question, and that the stay should remain in effect until April 5, 2013 to afford Debtor a reasonable opportunity to sell the property, on condition that Debtor make interest-only adequate protection payments to Lender in the interim.

FACTS

This is a single-asset real estate case concerning a mixed-use

MEMORANDUM DECISION RE
MOTION FOR RELIEF FROM STAY

building at 2655 Bush Street in San Francisco (the Property).
Debtor purchased the Property from Lender in 2005 for $9.4 million.
Debtor paid $3.0 million in cash and gave Lender a $6.4 million
promissory note to Lender (the Note) secured by a deed of trust on
the Property. The Note required Debtor to make monthly interest-
only payments for six years, and to pay the entire principal
balance on October 5, 2011 (the Maturity Date).

Debtor sought to demolish most of the existing structure and
to construct a new six-story apartment building. In 2009, Debtor
obtained from the City and County of San Francisco entitlements to
construct an 81-unit apartment building. The development of the
Property was delayed for 27 months by a lawsuit brought by Demas
Yan. This challenge was not resolved until August 2011, when the
California Supreme Court denied Yan's petition for review of the
Court of Appeals decision upholding the entitlements.

After the legal challenge to the entitlements was resolved,
Debtor did not have sufficient time to complete the development
and/or refinance the Note before the Note came due on October 5,
2011. Debtor attempted to sell the Property, but was unable to do
so, and filed the present chapter 11 case on February 8, 2012, the
day before a foreclosure sale scheduled by Lender.

Because this is a single-asset real estate case, the
continuation of the automatic stay is conditioned upon Debtor
making monthly interest payments to Lender. See 11 U.S.C. §
101(51B) and § 362(d)(3). Debtor's principal, Ernest McNabb, has
consistently made the required payments from his personal assets.

Debtor has actively attempted to market the Property during
the pendency of the chapter 11 case, but has thus far not been able

**MEMORANDUM DECISION RE**
**MOTION FOR RELIEF FROM STAY**

-2-

to close a sale. Debtor is currently in contract to sell the Property for $14.975 million. The buyer has until July 30, 2012 to complete the due diligence, and can back out of the contract through that date. Debtor filed a chapter 11 plan and disclosure statement on June 17, 2012 (the Plan). The Plan provides that the term of the Note, originally six years, will be extended by approximately 2.5 years.[1] The Plan did not come for hearing on confirmation before the final hearing on Lender's motion for relief from stay.

Lender's motion seeks relief from stay on two separate grounds. Lender first contends that Debtor has no equity in the Property, and that the Property is not essential to an effective reorganization because Debtor does not have sufficient resources to complete the development, and because the proposed development is inherently speculative. See 11 U.S.C. § 362(d)(2). Lender next contends that cause exists to grant relief from stay, because Debtor has unduly delayed selling the Property. See 11 U.S.C. § 362(d)(1). Lender agrees that Debtor should be afforded a brief time to close the pending sale, but does not agree to any continuance of the stay beyond October 1, 2012.

DISCUSSION

I

RELIEF BASED ON LACK OF EQUITY

At the beginning of the final hearing, Lender acknowledged that Debtor has at least some equity in the Property. The parties agree that the balance due under the Note is currently about $8.2

_____

[1] See note 2, below.

**MEMORANDUM DECISION RE**
**MOTION FOR RELIEF FROM STAY**

-3-

1 million.  Although one of Lender's appraisers valued the Property
2 at $7.6 million, Lender's second appraiser valued the Property at
3 $8.6 million, and Lender stipulated that the Property is worth that
4 amount, indicating that Debtor has a $400,000 equity in the
5 Property.  Thus, there is no basis for relief from stay under
6 section 362(d)(2).  Because Debtor has equity in the Property, it
7 is not necessary to determine whether the Property is necessary for
8 an effective reorganization.

9                                    II

10                    RELIEF FROM STAY FOR CAUSE

11        The relevance of value in a relief from stay hearing is not
12 limited to whether the Debtor has any equity in the collateral.
13 The amount of equity is relevant to whether the creditor's security
14 interest is adequately protected, and to whether the balance of
15 hardships weighs in favor of granting or denying relief from stay.

16        Thus, the parties went forward with the valuation hearing,
17 notwithstanding Lender's stipulation that Debtor has some equity in
18 the Property.  The parties presented evidence regarding the value
19 of the Property, the time necessary to sell the Property, and the
20 Debtor's efforts to date to sell the Property.

21 A.  Value and Adequate Protection

22        Lender's first appraiser, Jan Kleczewski, testified that the
23 fair market value of the Property is $8.6 million.  Lender's second
24 appraiser, Stephen Dunbar, testified that the Property is worth
25 $7.6 million.  Debtor's appraiser, Walter Ricci, testified that the
26 Property has a value of $14.5 million.

27        I discount the testimony of Mr. Dunbar, because the comparable
28 sales he used in his appraisal were not recent transactions and the

**MEMORANDUM DECISION RE**
**MOTION FOR RELIEF FROM STAY**

-4-

other appraisers testified that the market value of properties of this type has been appreciating rapidly in the past two years.

I discount the testimony of Mr. Ricci, because he valued the Property at $179,000 per authorized unit, and none of the comparable sales support that value. The highest per-unit price in any comparable sale was $159,000 for the property at 72 Townsend Street, and that property has a very important advantage over the Bush Street Property. The Townsend Street property is a functioning office building that has been recently renovated and is fully leased at market rent. It is a less risky investment than the subject Property, because, unlike the subject Property, it produces sufficient income in its current state that it can carry its debt service indefinitely and need not be developed as an apartment house to pay debt service and a return on capital. This fact suggests that the subject Property is worth less than, not more than, the $159,000 per-unit value indicated by the Townsend Street comparable.

I attach the most weight to the testimony of Mr. Kleczewski, who testified that the Property is worth $8.6 million, because his testimony is best supported by comparable sales. I believe he understates the value of the Property somewhat, because it does not explain fully the difference between the per-unit value shown in the most recent comparable sale (Townsend Street at $159,000 per unit) and the per-unit value he assigns to the subject Property ($107,000). While the Townsend Street is a better investment risk for the reasons stated in the previous paragraph, two other factors lessen its advantages over the subject Property: Townsend Street will entail higher construction costs, and it will be more

**MEMORANDUM DECISION RE**
**MOTION FOR RELIEF FROM STAY**

-5-

difficult to develop in the immediate future because it is fully
leased at present.

Taking account of all the evidence, I find that the fair
market value of the Property is at least $10 million, which means
that the loan-to-value rate is approximately 82 percent and that
Lender enjoys an 18 percent equity cushion.  This equity cushion,
together with the required monthly interest payments of 5.5 percent
on the entire balance, provide adequate protection to Lender for
the foreseeable future.

It is not necessary to determine the fair market value of the
Property with more precision, because additional value would not
cause this court to grant Debtor more time to sell the Property.
As explained below, once it is clear that Debtor has significant
equity and that Lender is adequately protected, the controlling
factors are the amount of time needed to sell the Property in an
orderly manner, and the proportion by which the term of the Note is
to be extended to afford Debtor time to sell.

B.  Undue Delay as Cause for Relief from Stay

Lender argues that cause exists to grant relief from stay
effective October 1, 2012, because Debtor has had a reasonable
opportunity to sell the Property and has unduly delayed closing a
sale by holding out for too high a price.  Debtor argues that the
Maturity Date should be extended at least to May 2014 to assure
that Debtor is not subject to any duress in selling the Property.

I conclude that the extent to which Debtor can extend the
Maturity Date, either through the operation of the automatic stay
or through a plan of reorganization is governed by what is "fair
and equitable."  Because the automatic stay is an injunction

**MEMORANDUM DECISION RE**
**MOTION FOR RELIEF FROM STAY**

-6-

governed by principles of equity, it is fully appropriate that whether there is cause to lift the stay depends upon considerations of fairness and equity. Because Creditor will object to confirmation of a plan that extends the maturity date of the Note beyond October 1, 2012, and because under section 1129(b) a plan can be confirmed over Creditor's objection only if the plan is fair and equitable, similar considerations govern plan confirmation. Although Debtor's proposed extension satisfies the requirements of section 1129(b)(1) by providing for payment of the full amount due, those are minimum requirements, and a court may determine that a plan is not fair and equitable in a more general sense, even if it satisfies the minimum requirements identified in section 1129(b)(1). <u>Fed. Sav. & Loan Ins. Corp. v. D & F Constr. Inc. (In re D & F Constr. Inc.)</u>, 865 F.2d 673 (5th Cir. 1989).

In determining what extension of the Maturity Date is fair and equitable, I take account of the following factors: (a) the risk of non-payment that would result from the extension; (b) the length of extension necessary to afford Debtor a reasonable opportunity to sell the Property free of unreasonable duress; (c) whether Debtor is making a good-faith effort to sell the Property promptly; (d) the reasons the Note was not paid by the Maturity Date; (e) the length of the original term of the Note and the proportion by which Debtor seeks to extend that term; (f) the hardship an extension imposes upon Lender; and (g) whether Debtor will make payments during the extension. Of these factors, I determine that the first three are the most important and should be afforded the most weight.

1. <u>Risk of non-payment</u>. The evidence shows that an

MEMORANDUM DECISION RE
MOTION FOR RELIEF FROM STAY

-7-

1  extension of the due date for two years or less would not

2  materially increase the risk that the Note will not be paid in

3  full.  There is an equity cushion of at least 18 percent:

4  Creditor's witnesses acknowledge that the Property should increase

5  in value over that period; and Debtor will be making monthly

6  interest payments at the contract rate during the extension.

7       2.  <u>Reasonable opportunity to sell</u>.  The evidence indicates

8  that an additional marketing period of nine months from the present

9  date (until April 5, 2013) will afford Debtor a reasonable

10  opportunity to sell the Property in an orderly manner, and will

11  enable Debtor to sell without unreasonable duress.

12       Mr. Tony Crossley, a real estate broker called by Debtor,

13  testified that the typical marketing process for the type of real

14  property at issue here involves the following time periods:

15       1.  30 days to prepare a financial analysis of the property

16       and prepare a sales brochure.

17       2.  60-90 days to advertise and show the property and provide

18       the previously prepared financial analysis to potential

19       purchasers.

20       3.  15 days to call for purchasers to submit offers.

21       4.  30-60 days to negotiate a purchase-sale agreement with the

22       high bidder.

23       5.  60-90 days for the purchaser to perform due diligence and

24       decide whether to complete the purchase.

25       6.  30-60 days to close the sale.

26  Mr. Crossley testified that the first deal sometimes falls through,

27  so that steps 3 through 6 must be repeated, requiring an additional

28  4.5 to 8.5 months before a sale can close.

**MEMORANDUM DECISION RE**
**MOTION FOR RELIEF FROM STAY**

1    In sum, Mr. Crossley testified that the time required to close
2  a sale is 7.5 to 11.5 months if the purchaser does not back out
3  after performing due diligence, and 11.5 to 18.5 months if the
4  first purchaser backs out and the second purchaser does not.

5    Debtor has completed steps 1 through 5 of this marketing
6  process, and is currently in a contract under which the due
7  diligence period will expire on July 30, 2012.  The April 5, 2013
8  deadline will permit Debtor to repeat steps 3 through 8 at least
9  one more time if the current purchaser backs out after completing
10  due diligence.

11    Debtor's counsel urges that any deadline for sale will enable
12  potential purchasers to use that deadline to exert concessions from
13  Debtor.  This argument is unpersuasive.  The Bankruptcy Code does
14  not contemplate that the term of a note be lengthened to the extent
15  necessary to protect a debtor from *all* duress, but only that the
16  debtor be protected from *unreasonable* duress.  With the delay of
17  any foreclosure sale until after April 5, 2013, Debtor will enjoy a
18  marketing period that extends: (a) 19 months since the Supreme
19  Court upheld the validity of the entitlements; (b) 18 months since
20  the Note matured; (c) 14 months since Debtor filed its Bankruptcy
21  Petition; and (d) nine months after entry of this order (during
22  which period Debtor will enjoy highly certain protection
23  against foreclosure).  This is a sufficient marketing period to
24  allow Debtor to sell the Property free of *unreasonable* duress.

25    3.  Good-faith efforts to sell.  The evidence indicates that
26  Debtor has vigorously attempted to sell the Property ever since the
27  legal challenge to the entitlements was resolved in August 2011.
28  The evidence does not indicate that Debtor has unduly delayed

**MEMORANDUM DECISION RE**
**MOTION FOR RELIEF FROM STAY**

-9-

closing a sale by demanding too high a sale price.  The April 5, 2013 deadline will impose appropriate marketing discipline on Debtor.

4.  <u>Reason why the Note was not paid on the Maturity Date</u>. Debtor was unable to pay the note by the Maturity Date primarily because of legal challenges to the entitlements.  Although this involves no negligence or inequitable conduct by Debtor, it does not justify a long extension of the Maturity Date, because such challenges are inherent and known risks in developing real property in San Francisco.

5.  <u>Proportion by which original term extended</u>.  The original term of the Note was six years.  Lender seeks to limit the extension to one year (17 percent).  Debtor seeks to extend the original term by 2.5 to 3 years (42 to 50 percent).[2]  Lender is not a bank or institutional lender that by its nature will make a new loan when repaid.  Lender made the loan in connection with selling the Property to Debtor, not as a stand-alone transaction.  The origin of the loan and the nature of Lender weighs against an extension of the term of the Note by more than the 18 months (25 percent) embodied in the April 5, 2013 expiration of the automatic stay.

---

[2] Debtor's Responsive Statement to Seto's Motion for Relief from Stay argues that any public deadline for closing a sale should be at least 2 to 2.5 years.  Because this document was filed on May 10, 2012, approximately seven months after the Maturity Date of the Note, the term extension proposed by Debtor would be approximately 2.5 to 3 years after the Maturity Date of the Note, thus extending the original six-year term of the Note by 42 to 50 percent.  Debtor's proposed plan of reorganization provides that the Note would be paid off 18 months after the plan became effective.  Because the disclosure statement has not yet been approved, the Note as modified by the plan would not likely mature until May 2014, an extension of the original term by 2.5 years (42 percent).

**MEMORANDUM DECISION RE**
**MOTION FOR RELIEF FROM STAY**

-10-

6. _Hardship of extension on Lender_. Neither party presented any evidence regarding the hardships (or lack thereof) that the Lender would suffer from an extension of the Maturity Date.

7. _Interim payments_. As noted above, Debtor is required to make monthly interest payments on the entire balance due at the contract rate (5.5 percent) as a condition to the continuation of the automatic stay through April 5, 2013.

8. _Summary_. After consideration of all the factors above, I determine the following factors to be controlling. Debtor should be given a reasonable opportunity to sell the Property, because Debtor is providing adequate protection, and because Debtor is making a good-faith effort to sell the Property. Maintaining the automatic stay for an additional nine months will afford Debtor a reasonable opportunity to sell the Property without undue duress. Maintaining the automatic stay for more than nine more months would increase the term of the Note to an extent that is unreasonable in light of the original term and the limited benefit to Debtor of a further extension.

CONCLUSION

Relief from stay is denied at this time on condition that Debtor make monthly interest payments at the non-default contract rate specified in the Note on the full amount of principal and interest due under the Note. Creditor has full relief from stay effective April 5, 2013.

**\*\*END OF MEMORANDUM DECISION\*\***

**MEMORANDUM DECISION RE**
**MOTION FOR RELIEF FROM STAY**

1                         **Court Service List**

2

3   2655 Bush LLC
    2655 Bush Street
4   San Francisco, CA 94115